PROVIDED TO
⌐TIN CORRECTIONAL INSTITUTION
6 / 5 / 18
FOR MAILING

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE ____ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

PROVIDED TO
MARTIN CORRECTIONAL INSTITUTION
ON  6 / 5 / 18
FOR MAILING

Deonsey Lonte Johnson ____ ,

Inmate # P13172 ____

(Enter full name of Plaintiff)

vs.

CASE NO: 4:18CV282MW-CAS

(To be assigned by Clerk)

Shannon Varnes [Warden] ____ ,
J. Hill [Correctional Officer] ____ ,
J. Brubaker [L.P.N.] ____ ,

_____ ,

_____ ,

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I.    PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:    Deonsey Lonte Johnson
Inmate Number    P13172
Prison or Jail:    Martin Correctional Inst.
Mailing address:    1150 s.w. Allapattah Road
Indiantown, FL. 34956

## II.    DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for every Defendant:

(1)    Defendant's name:    Shannon Varnes
       Official position:    Warden
       Employed at:    Taylor Corr. Inst.
       Mailing address:    8515 Hampton Springs Rd.
       Perry, FL. 32348

       (1)
       Last known address / place of employment. "residential unknown to plaintiff"

(2)    Defendant's name:    J. Hill
       Official position:    Correctional officer
       Employed at:    Taylor Corr. Inst.
       Mailing address:    8515 Hampton Springs Rd.
       Perry, FL. 32348

       (2)
       Last known address / place of employment. "residential unknown to plaintiff"

(3)    Defendant's name:    J. Brubaker
       Official position:    L.P.N.
       Employed at:    Taylor C.I. /Centurion of Fla.
       Mailing address:    8515 Hampton Springs Rd.
       Perry, FL. 32348

       (3)
       Last known address / place of employment. "residential unknown to plaintiff"

## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

2

III.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

IV.    **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.    Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( )                    No(✓)

    1.    Parties to previous action:
        (a)    Plaintiff(s): _____ N/A _____
        (b)    Defendant(s): _____ N/A _____

    2.    Name of judge: _____ N/A _____    Case #: ___ N/A ___

    3.    County and judicial circuit: _____ N/A _____

    4.    Approximate filing date: _____ N/A _____

    5.    If not still pending, date of dismissal: _____ N/A _____

    6.    Reason for dismissal: _____ N/A _____

    7.    Facts and claims of case: _____ N/A _____

**(Attach additional pages as necessary to list state court cases.)**

B.    Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( )                    No(✓)

    1.    Parties to previous action:
        a.    Plaintiff(s): _____ N/A _____
        b.    Defendant(s): _____ N/A _____

    2.    District and judicial division: _____ N/A _____

    3.    Name of judge: _____ N/A _____    Case #: ___ N/A ___

    4.    Approximate filing date: _____ N/A _____

    5.    If not still pending, date of dismissal: _____ N/A _____

    6.    Reason for dismissal: _____ N/A _____

3

7.   Facts and claims of case: _____ N/A _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.   Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(  )                    No(✓) *ie, "unsure as to this question"*

If YES, describe each action in the space provided below.  If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.   Parties to previous action:
     a.   Plaintiff(s): _____ N/A _____
     b.   Defendant(s): _____ N/A _____
2.   District and judicial division: _____ N/A _____
3.   Name of judge: ____ N/A ____      Case #: ____ N/A ____
4.   Approximate filing date: _____ N/A _____
5.   If not still pending, date of dismissal: _____ N/A _____
6.   Reason for dismissal: _____ N/A _____
7.   Facts and claims of case: _____ N/A _____

_____

**(Attach additional pages as necessary to list cases.)**

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed:

Yes(  )                    No(✓)

1.   Parties to previous action:
     a.   Plaintiff(s): _____ N/A _____
     b.   Defendant(s): _____ N/A _____
2.   District and judicial division: _____ N/A _____
3.   Name of judge: ____ N/A ____      Case Docket # __ N/A __
4.   Approximate filing date: __ N/A __   Dismissal date: __ N/A __
5.   Reason for dismissal: _____ N/A _____

4

6.    Facts and claims of case: _____ N/A _____

(Attach additional pages as necessary to list cases.)

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  Do not make any legal arguments or cite to any cases or statutes.  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  (If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)  Herein after: I / Me = Plaintiff ...

1. On 5-10-17, between 8:00 Am, 11:48 Am, while incarcerated at Taylor C.I., I exited quad 2 of G-Dorm and advised Defendant J. Hill that inmate Vincent Governor # Tie 1029 / G21114, and Brandon Martalitsch # CO9128 / G21101 had threatened to stab me if I didn't get out of the dorm.

2. Defendant Hill replied: "Hey, I ain't got nothing to do with that" ___ I then stated: "OKay, if something happens to me #'or on you." ___ Defendant Hill once more replied: "Man you gotta deal with that the best way you can. You know how this shit goes.___

3. By way of said reply, Defendant Hill referred to personal Knowledge of mine, in which, he'd on previous occasions sold contraband to, and showed favoritism towards Governor and Martalitsch due to said interests.

4. Later, during the hours of 8:00 Am 11:48 Am, Governor and Martalitsch approached me in the dayroom of quad 2 of G-dorm and asked me to come to cell # 10 ... I consented / followed.

5. Inside of cell # 10, Governor and Martalitsch threatened to stab me to death if I wasn't out of the dorm by dinner time, or reactivated as a gang-member. I feared that they would, in fact, carry out such threats. They also possessed homemade weapons, and the opportunity / ability to do as threatened. I exited cell # 110 shortly thereafter.

6. Later, between 8:00 - 11:48 Am, I approached Martalitich in the dayroom of G2 and asked to speak with him, at which time he and I relocated to the back of the dayroom.

7. As Martalitich and I stood conversing, Governor approached and began to horseplay with Martalitich, which prompted me to inform Governor that we'd been speaking of personal matters, and that his interrupting us had been rude and selfish.

8. An altercation ensued, at which time Governor and I began to wrestle on the dayroom floor of G2 dormitory, with first intervention, or interception from Defendant Hill.

9. Following said incident (which I discontinued once I discovered that Governor's silver bead necklace had broke during the tussle) Martalitich and I went to cell #110, at which time my angry/agitated Governor followed.

10. Inside of Cell #110, Governor accused me of trying to shand off, then reiterated a series of threats against my life on condition that I re-initiate myself as a gang-member.

11. I verbally expressed my disagreement with Governor's selfishness, and my unwillingness to ever involve myself or re-initiate as a gang-member, then attempted to exit/walk out of the cell.

12. Governor blocked my path/exit in a physical (aggressive) manner, which amounted to a shove in the chest with the palms of his hands, thereby preventing my exit.

13. I asked Governor to move out of my way, and let me out of the cell, at which time he refused, then tried initiate a physical altercation with me. Said actions by Governor intimidated me.

6

Continuation of Section - V. Statement of facts

14. A series of threats of violence / against my life ensued, until Governor ordered Martalitsch: "Don't let him go no-where",___ At which time Governor exited the cell, as Martalitsch moved into his place to now block my exit in an intimidating / aggressive manner. I feared imm-inent harm from both Governor and Martalitsch.

15. Once Governor had exited, I asked Martalitsch to move aside, aside, so I could exit / leave the cell. Mart-alitsch refused by gathering himself into an even more aggressive / intimidating stance.

16. Governor returned shortly, pulled out a homemade shank, and placed another series of threat against my life. He and Martalitsch both placed verbal threats against my life, coupled with threatening gestures. Governor's threatening gestures were with a deadly weapon / rusty homemade shank that had been fashioned out of metal, and sharpened to a dangerous point at one end.

17. Said threats / gestures placed me in grave fear of imminent death, or great bodily harm. Governor and Martalitsch both possessed the opportunity to carry out such threats / gestures, and I believed that they were about to / would.

18. During said incident, Defendant Hill opened the cell-door one, or more times at the urging / request of John Doe inmate (possibly Governor).

19. For security / safety concerns such as those indicated, cell-doors should have been secured open at said times, and Defendant Hill had a duty remain alert / vigilent for abnormal activities around and with-in a cell housing an inmate.

20. Inmate Lomax (Brandon's cellmate) tried to enter cell #10 during said incident, but Governor shooed him back out.

Continuation of Section-V, Statement of facts

21. After one or two trips in and out of cell #110 (making threats of violence) (hostile), Governor left the cell. I was able to exit the cell without further incident therein, from Martalitsch or Governor.

22. For a period of approx. 10-40 minutes, Plaintiff was held, detained, by force, intimidation, and with a deadly weapon, inside of cell #110 of G2 dormitory, at Taylor C.I - Main unit on 5-10-17, against my will. Said location is, in fact, a bounded area.

23. Said detention/restraint was a proximate result of Defendant Hill, and Defendant Varnes' conduct, act, or omissions. (Defendant Varnes' conduct, act, or omissions will be set forth herein later paragraphs)

24. Between 11:00 Am-12:00 pm, I once more exited G2 quad at which time, Defendant Hill shrugged his shoulder at it to indicate, although aware of what was taking place, there was nothing he could do to help me due to his conflict of interests.

25. After returning to G2, I decided to walk past cell #110, which was occupied by Governor and Martalitsch at the time.

26. Upon passing cell #110, I observed inmate Governor with two homade shanks/pieces of metal sharpened at the tip for piercing (a deadly weapon).

27. I also observed Governor handing Martalitsch one of the homade shanks, while ordering Martalitsch to stabb me, "wet that nigga up" "I aint about to sleep on him", etc.

28. At this point, and prompted by a reasonable fear of imminent death, or great bodily harm, from Governor and Martalitsch, I armed my self with a broomhandle for my own protection (as I soberly been no other recourse)

Continuation of Section - V, Statement of Facts

29. Upon doing so, and asking Governor if I'd actually over-hear correctly that he intended to cause me harm, and that because he had no right to put his hands on me, I would not allow it, Martalitsch exited Cell 110, approached me. (While Governor ordered: "Handle that cuz")

30. After several attempts to retreat / back up, and Martalitsch's persistent approach (in threatening manner), including two or more instances of bodily contact that was unwelcomed. Coupled with a reasonable fear of imminent death or great bodily harm. I, grabbing the broom handle with protecting myself (reasonably) from serious imminent harm at my first and furthermost priority / in defense.

31. Altercation ensued, wherein, I was physically attacked (violently) by inmate Governor and Martalitsch for a period extending approx. 7 - 8 minutes, in the dayroom of G2 dormitory at Taylor C.I. - Main Unit, on 5-10-17.

32. During said altercation, Inmate Governor, for a period, held my legs while repeatedly ordering Martalitsch to stab me.

33. Martalitsch did, in fact, possess a homemade shank / piece of metal sharpened to a point at one end, which he used to stab me multiple times. ...(approx. 5-6) at Governor's insistence / urgings.

34. Inmate Governor and Martalitsch also acted in concert, one with the other, to choke, punch, kick, and stomp me, after they'd stabbed me multiple times already, causing serious injuries and substantial damages.

35. Said actions of Governor and Martalitsch, coupled with the acts / omissions of Defendant Hill and Varnes (asserted in re: Varnes in later paragraph's) worked substantial injuries to my civil, and constitutional / legally protected rights.

<u>Continuation of Section-V, Statement of facts</u>

36. Said aggravated assaults, and aggravated battery, were the proximate result of Defendant Hill, and Defendant Varnes' acts / omissions.

37. Defendant Hill's conduct, act or omissions failed to comport with State, Federal, International, or Department of Corrections given laws / rules.

38. Defendant Hill was aware of the attack, and or placed on sufficient notice of the imminence of such dangers to the plaintiff, but demonstrated a conscious disregard of the harm that his actions, Governors, or Ma-ralititis could do to the interests or rights of the Plaintiff.

39. As Warden of Taylor C.I.- Main Unit, Defendant Varnes knew, or should have known, that Defendant Hill was under investigation for introducing Contraband into said institution, for the purpose of distributing it among the general inmate population, "for a long time".

40. Defendant Varnes should have known, or knew, that Defendant Hill's illicit relationship as described, would carry favoritism from Hill for buyers / distributors such as Governor and Martalitch, thereby, fostering an unsafe environment / condition such as that encountered by plaintiff.

41. Rather than prompt action to eliminate said illicit relationships, and thereby, the unsafe environment / con-dition fostered by such, Defendant Varnes allowed Defendant Hill to remain at his regular post (G-dormitory housing officer), and thus, maintain said illicit activities.

42. Said illicit relationship with Governor and Martalitch, fostered by Defendant Hill, did, in fact, create an unsafe environment / condition / situation at Taylor C.I.- Main Unit, that on 5-10-17 constituted a proximate cause of the injuries / damages complained of by the Plaintiff, to include legal injuries, as well as mental, emotional, and physical damages / disfigurement, "Permanent Physical Damages."

Continuation of Section ~V, Statement of facts

43. Defendant Varnes was under, not only a duty to enforce adherance to State/federal law and F.A.C. Chapter 33 rules by Defendant Hill, but to expend every means available to abide by said law/rules himself as they relate to ensuring the personal safety of the Plaintiff.

44. Plaintiff rights to personal safety was substantially infringed/violated without a compelling interest to justify such intrusions upon his rights as legally protected by various state statutes (Fla.), Fla. Const.; U.S. Const.; and international law, by the acts/omission of Defendant Hill, and Varnes.

45. Plaintiff asserts that at all relevant times herein, as set forth, all aforenamed Defendants acted under the color of law/office and with deliberate indifference when comitting said acts, or omissions, which proximately resulted in Plaintiff's injuries/damages.

46. Plaintiff further asserts that he hereby sues the aforenamed Defendants in their individual, and official capacities.

47. John/Jane Doe officers and medical staff arrived after said incident/attack, and transferred me to medical via wheelchair.

48. Upon arrival to medical, Defendant Brubaker, with the assistance of three or more, Jane Doe, medical staff members, applied sutures to three stab wounds in my right arm, thereafter documenting only those three wounds and one laceration to my lower lip, on 5-18-17.

49. The following injuries were visible to, and or, reported by me personally to, Defendant Brubaker, and the team of Jane Doe medical staff assisting him, but omitted from the "Diagram Of Injury", and "Emergency Room Record Form", by Defendant Brubaker (per policy, all injuries were supposed to be documented on the DC4-708, Diagram of injury)

<u>Continuation of Section -V.</u> Statement of facts

as follows: "Chipped tooth", "head injuries", "neck injuries", "left and right shoulder injuries", "back injuries", "left eye injury", "stab wound to right forearm", "stab wound to left leg", "laceration to upper right arm", "several lacerations inside mouth" and "a bitten tongue", On 5-10-17.

50. In addition to omitting the aforementioned "substantial injuries" from Plaintiff's medical records, Defendant Brubaker wholly failed to treat, or order treatment for, said injuries. (excluding, cleansing and wrap bandage to stab wound on right forearm) (and 24 hour observation)

51. The injuries listed in paragraph *49 were sustained on 5-10-17, and Plaintiff was transferred (mental health up-grade), from Taylor C.I.- Main Unit on 5-31-17 without adequate medical treatment/examination being provided by Defendant Brubaker in re: said injuries. NO X-rays, C.A.T., or Cervical Scans etc., despite my being consciousness on 5-11-17."

52. Plaintiff, has suffered continuing damages as a result of the injuries sustained, yet not examined, documented, or treated on 5-10-17, including, but not limited to: <u>left shoulder pain/extreme</u>, resulting in emergency visit to medical, recieving sling/ultimately Naproxen pain and inflammation reducer prescription on approx. 7-8-17 — 7-10-17; <u>extreme neck pain/</u> emergency visit on approx. 7-15-17; <u>extreme neck pain/</u> <u>temporary paralysis from mid-neck down</u> (excluding my right arm), resulting in emergency trip to medical via stretcher, on 7-16-17. and <u>extreme neck pain/temporary</u> <u>paralysis from mid-neck down</u> (excluding right arm) resulting in emergency trip to medical via flatboard/ stretcher to medical, and administered pain shot etc. on 7-21-17. Recent X-rays of neck revealed several damaged disc's, "permanent."

Continuation of Section -V. Statement of Facts

**53.** Other continual damages that are the result of said injuries / trauma sustained to Plaintiff's interest / body / head on 5-10-17 are:

a. Fear of being box-in / cornered, or in small areas.

b. Fear of being stabbed unawares multiple times.

c. Repeated nightmares of being stabbed to death, or chased with a homemade shank.

d. Difficulties, and feel extreme discomfort / pain when I attempt to raise my right arm up to the side, or behind my back. I feel a strong tug at top front, and rear side of shoulder, due to two deep stab wounds to right shoulder muscle.

e. Permanent scars on my skin / arm, leg, and face, which has had "substantial" adverse effect on my level of self-esteem, and appearance.

f. A chipped front tooth, which has had "substantial" adverse effects on my level of self-esteem, and appearance.

g. Difficulties sleeping, due to neck, back, and shoulder pains that are excruciating / breathtaking.

h. Black-outs / unexpected fainting, due to head injuries.

i. Instances of short / long-term memory lost, due to head injuries.

Continuation of Section-V. Statement of facts

     j. Fear of trust for other inmates, correctional staff, or medical personnel.

**54.** During the aggravated battery / attack, I:

    a. Felt extreme pain.

    b. Was horrified beyond belief, and anything ever experience before. (Feared horrible, indecent death)

**55.** During the "false-imprisonment" / "aggravated assault," I:

    a. Was extremely frightened that Governor would stab me with the homade shank he possessed, or

    b. Governor and Martalitisch would beat me to death inside of cell #110 without my being able to notify / signal for help.

**56.** Items of evidence Plaintiff anticipates to support his claims / said asserted facts include, but are not limited to:

    a. Camera / video footage of attack / dayroom, and cell #110 of G2 dormitory at Taylor C.I.- Main Unit, on 5-10-17, between 8:00-11:55 Am.

    b. Camera / video footage of G-dormitory's officer station flap etc... on 5-10-17, between 7:00Am-11:55 Am

    c. Plaintiff's Medical records / files. 5-10-17 ⟶

Continuation of Section-V. Statement of facts

d. Plaintiff's mental health records/files.

e. John/Jane Doe officers who arrived immediately after attack/incident, and observed Plaintiff's state, and/or condition/injuries.

f. Jane Doe medical staff who arrived immediately after attack/incident, and who were present in E.R., thus, observing Plaintiff's state, and/or condition/injuries.

g. John/Jane Doe administrative staff, who entered E.R. following attack/incident, thereby observing Plaintiff's state, and/or condition/injuries.

h. John Doe inmates who were assigned to G2 dormitory on 5-10-17, and who witnessed said attack/incident, and Plaintiff's state, condition, and/or injuries.

i. Photographs of the injuries (some of them) taken by Srgt. M. Edwards on 5-10-17, in re: investigation/fact finding inquiry concerning Plaintiff etc.

j. Defendant Hill's officer files/Taylor C.I.

k. Inspector Potter's investigation files/reports in re: Defendant Hill's alleged illicit activities while employed at Taylor C.I.

Continuation of Section-V, Statement of facts

57. Plaintiff avers that he has set forth sufficient facts to support/establish plausible 8th Amendment claims, and or, that the discovery process will produce admissible material/facts to support/establish the plausibility of plaintiff's claims as attempted to be brought forth by this instant action.

58. Plaintiff "DEMANDS A JURY TRIAL" in re all issues___

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific.  Number each separate claim and relate it to the facts alleged in Section V.  **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

8th Amendment Violations:

1. Defendant J. Hill violated Plaintiff's rights as guaranteed by the Eighth Amendment of the U.S. Constitution, by:

   a. Being deliberately indifferent to, and failing to protect Plaintiff from, serious bodily harm / dangerous conditions (the risk of) within the prison.  See Continuation pages →

## VII.    RELIEF REQUESTED:

State briefly what relief you seek from the Court.  Do not make legal arguments or cite to cases/ statutes.

Plaintiff hereby seek judgment against the foregoing Defendant[s] in the total sum of $2,000,000 (two million dollars) per Defendant, for, but not Limited to, said injuries, and the following damages: Compensatory; Punitive; Descretionary; Cosmetic; and Nominal; Including costs of suit.   #2) Preservation of all items listed in Par. 56(a)-(k)

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

June 5th, 2018
_____
(Date)

_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the ___5th___ day of ___June___, 20_18_ .

_____
(Signature of Plaintiff)

Revised 03/07

7

Continuation of Section-VI, Statement of Claims

See Section-V, paragraphs 1-**38**, 42, 45-46, 48-49, 52-53(j), 56(a-k)

b. Failing to protect Plaintiff from aggravated assault. See Section-V, paragraphs 1-5, 8, 16-21, 55(a-b)

c. Failing to protect Plaintiff from aggravated battery. See Section-V, paragraphs 1-3, 29-38, 42, 44-45, 48-49, 52-54, 56(a-k)

d. Failing to protect Plaintiff from false imprisonment. See Section-V, paragraphs 1-3, 7-23, 55(a-b)

2. Defendant Varnes violated Plaintiff's right as guaranteed by the Eighth Amendment of the U.S. Constitution, by:

a. Being deliberately indifferent to Plaintiff's right to personal safety / failing to take reasonable action to protect Plaintiff from serious harm / dangerous conditions within the prison. See Section-V, paragraphs 1-49, 52-56(a-k)

b. Being deliberately indifferent to Plaintiff's right to personal safety / failing to take reasonable action to terminate a dangerous condition within the prison. See Section-V, paragraphs 39-44, 48-56(a-k)

3. Defendant Brubaker, violated Plaintiff's right as guaranteed by the Eighth Amendment of the U.S. Constitution, by:

a. Being deliberately indifferent to, and failing to provide Plaintiff with adequate medical care / treatment for serious medical condition / substantial

Continuation of Section-VI, Statement of Claims

injuries. See Section-V, paragraphs 45-53(j), 56

b. Falsifying, and/or, avoidance of the records/
medical. See Section-V, paragraphs 48-53(j), 56

FROM   Hasler                    PRIORITY MAIL
       06/07/2018
       US POSTAGE  $007.30⁰

                            ZIP 34956
                            011D11653637

Mark Dorsainvil
1603 S.W. Allapattah Rd.
Indiantown, FL 34956
LEGAL MAIL

CHECKED JUN 08

THIS MAIL ORIGINATED AT
MARTIN CORRECTIONAL
INSTITUTION

Clerk of U.S. DISTRICT COURT
111 N. ADAMS STREET
TALLAHASSEE, FL 32301-7730

THIS MAIL ORIGINATED AT
MARTIN CORRECTIONAL
INSTITUTION

THIS MAIL ORIGINATED AT
MARTIN CORRECTIONAL
INSTITUTION