# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

## AMENDED CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

Deansey lorie Johnson

Inmate # P13172

(Enter full name of Plaintiff)

RECEIVED BY
UNION CORRECTIONAL INC.
OCT 18 2018
FOR MAILING

vs.

CASE NO: 4:18cv282-MW/CAS
(To be assigned by Clerk)

J. Hill [Correctional Officer], ← (individual Capacity)

J. Brubaker [L.P.N] ← (individual Capacity)

_____,

_____,

_____.

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

## I.    PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:    Deonsey Lonte Johnson

Inmate Number    P13172

Prison or Jail:    Union Correctional Inst.

Mailing address:    P.O. Box 1000
Raiford, FL 32083

## II.    DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for <u>every</u> Defendant:

(1)    Defendant's name:    J. Hill
Official position:    Correctional Officer
Employed at:    Taylor Corr. Inst.
Mailing address:    8515 Hampton Springs Rd.
Perry, FL 32348

(1)
*Last known address / place of employment indicated.
- - - Home address unknown.

(2)    Defendant's name:    J. Brubaker
Official position:    L.P.N.
Employed at:    Taylor C.I. / Centurion of Fla.
Mailing address:    8515 Hampton Springs Rd.
Perry, FL 32348

(2)
*Last known address / place of employment indicated.
- - - Home address unknown

(3)    Defendant's name:    _____
Official position:    _____
Employed at:    _____
Mailing address:    _____
_____

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV.   PREVIOUS LAWSUITS

NOTE:  FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes(  )                    No( ✓ )

1.   Parties to previous action:   N/A
(a)   Plaintiff(s): _____
(b)   Defendant(s): _____

2.   Name of judge: _____   Case #: _____

3.   County and judicial circuit: _____

4.   Approximate filing date: _____

5.   If not still pending, date of dismissal: _____

6.   Reason for dismissal: _____

7.   Facts and claims of case: _____
_____

**(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes(  )                    No( ✓ )

1.   Parties to previous action:   N/A
a.   Plaintiff(s): _____
b.   Defendant(s): _____

2.   District and judicial division: _____

3.   Name of judge: _____   Case #: _____

4.   Approximate filing date: _____

5.   If not still pending, date of dismissal: _____

6.   Reason for dismissal: _____

3

7.   Facts and claims of case: _____ *N/A* _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.   Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( )?                          No(✓)? *Unsure as to this question!*
                                        *Explaination provided below.*

If YES, describe each action in the space provided below.  If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.   Parties to previous action:  *? (Criminal)? Federal Habeas Corpus*
     a.   Plaintiff(s): *Deonfey Lante Johnson*
     b.   Defendant(s): *State of Florida, et. al.*
2.   District and judicial division: *Northern District / Pensacola Division*
3.   Name of judge: *Roger Vinson*      Case #: *3:15-cv-261-RV-GRJ*
4.   Approximate filing date: *? lost records*
5.   If not still pending, date of dismissal: *? lost records*
6.   Reason for dismissal: *"Untimely"*
7.   Facts and claims of case: *?   I'd complained / attacked Conviction, based on Subsequent Acquittal of Collateral Crimes.*

**(Attach additional pages as necessary to list cases.)**

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed:

Yes( )?                          No(✓)? *Same reasoning / uncertainty as expressed above in section "c"*

1.   Parties to previous action:
     a.   Plaintiff(s): _____
     b.   Defendant(s): _____
2.   District and judicial division: _____
3.   Name of judge: _____ Case Docket # _____
4.   Approximate filing date: _____ Dismissal date: _____
5.   Reason for dismissal: _____

4

6.   Facts and claims of case: _Same at Section "C"_ _ _ _

**(Attach additional pages as necessary to list cases.)**

## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  <u>Do not make any legal arguments or cite to any cases or statutes.</u>  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

1. On 5-10-17, while incarcerated at Taylor C.I. due to my criminal / State court conviction and sentence, between 8:00 Am - 11:48 Am, I exited quad 2 of G-Dormitory and approached G-Dorm's officers Station where officer J. Hill was working, at which time I advised Defendant Hill that inmate Vincent Governor # 116 7029 cell # G2114", and Brandon Martalitch # C09128 cell # G2110^L had threatened to stab me if I didn't get out of the dorm.

2. At this time, I also asked Defendant Hill if he would intervene on my behalf and try to resolve the matter cause I couldn't let them (Governor or Martalitch) hurt me.

3. Defendant Hill replied: "Hey, I ain't got nothing to do with that". I then stated: "Okay, if something happens to me it's on you". Defendant Hill once more replied: "Man you gotta deal with that the best way you can. you know how this shit goes".

4. By way of said (latter) reply, Defendant Hill referred to personal knowledge of mine. wherein, on previous occasions I'd observed him (Hill) sell contraband to, and show favoritism towards Governor and Martalitch due to such interests.

5. Later, during said morning, between 8:00 Am – 11:48 Am, Governor and Martalitich approached me in the dayroom of quad 2 of G-Dorm and asked me to come to cell #110, which I did.

6. Inside of cell #110, Governor and Martalitich threatened to stab me to death if I wasn't out of the dorm by dinner, I feared that they would, in fact, carry out such threat, they possessed homemade weapons, and the opportunity/ability to do as threatened. I exited cell #110 shortly thereafter.

7. Later, during said morning, between 8:00 Am – 11:48 Am, I approached Martalitich in the dayroom of G2-dormitory and asked to speak with him, at which time he and I relocated to the back of the dayroom and began to talk.

8. As Martalitich and I stood conversing, Governor approached and began to horseplay with Martalitich. At that time, I informed Governor that we'd been speaking of personal matters, and that his interrupting us had been rude and flat out selfish....

9. An altercation ensued, at which time Governor and I began to wrestle on the dayroom floor of G2-dormitory, without intervention etc. from Defendant Hill.

10. Following said incident (which I was able to discontinue) Martalitich and I went to cell #110, at which time an angry/agitated Governor followed.

11. Once inside of cell #110, Governor accused me of trying to show off, and reiterated a series of previously made threats to me.

6

<u>Continuation of Section—V</u>, Statement of facts

12. Upon my verbally expressing my disagreement with Governor's selfishness, and my unwillingness to submit to his demands / orders, I attempted to exit the cell.

13. At this time, Governor blocked my path / exit in a physical (aggressive) manner; which amounted to a shove in my chest with the palms of his hands, thereby preventing my exit.

14. I then asked Governor to move out of my way, and let me out of the cell. He refused, then tried to initiate a physical altercation with me, which, intimidated me.

15. More threats of violence upon my persons / life ensued from Governor, until he ordered Martalitich: "Don't let him go anywhere". At this time, Governor exited the cell, as Martalitich moved into his place to now block my exit.

16. Upon Governor's exit, I'd asked Martalitich to move aside, so I could exit / leave the cell. Martalitich refused my request by gathering himself into an aggressive / intimidating stance.

17. Governor returned shortly, pulled out a homemade shank, and placed another series of threats against my life. He and Martalitich both placed verbal threats against my life, coupled with threatening gestures. Governor's threatening gestures were with a deadly weapon / rusty homemade shank that had been fashioned from metal, and sharpened to a dangerous point at one end.

18. Said threats / gestures placed me in grave fear of imminent death, or great bodily harm. Governor and Martalitich both possessed the opportunity to carry out such threat, and I believed that they were about to / would.

19. During said incident, Defendant Hill <u>opened</u> the cell-door at least twice, at the urgings / request of a John Doe inmate, possibly Governor, ...i.e. "unsecured it / allowed to be closed."

20. For security / safety concerns such as those indicated, rule requires the cell doors remain secured open at / during said hours.

(7)

Continuation of section-V, Statement of facts

21. During said incident, Inmate Lomax (Martalitsch's cell-mate) tried to enter cell#110 (which was he and Martalitsch's assigned cell), but Governor shoved him back out forcefully.

22. After approx. two trips in and out of cell#110 (making threats of violence towards me), Governor exited, and I was finally able to exit also, without further incident therein, from Martalitsch or Governor.

23. For a period of approx 10-40 minutes, I was held/detained, by force, intimidation, and with a deadly weapon, inside of cell#110 of G2 dormitory, at Taylor C.I.-Main Unit, on 5-10-17, against my will. Said location is, in fact, a banded area.

24. Said detention/restraint was a proximate result of Defendant Hill's acts, and or omissions.

25. Between 11:00 Am -12 Pm, on 5-10-17, I once more exited quad 2 of G-dorm, at which time, upon my making eye contact with Defendant Hill, Defendant Hill shrugged his shoulders at me, as indicative of being aware of what had just transpired, but suggestive of his inability to intervene/assist me due to his conflicted interests.

26. After returning to G2, I decided to walk past cell#110, which was occupied by Governor and Martalitsch, at this time I observed Governor with two homemade shanks/pieces of metal sharpened at the tip for piercing (deadly weapons).

27. I also observed Governor handing Martalitsch one of the homemade shanks, while ordering/instructing Martalitsch: "Wet that nigga up!" "I aint about to sleep on him."

28. At this point, and prompted by a reasonable fear of imminent death, or great bodily harm, from Governor and Martalitsch, I armed myself with a broomhandle for my own protection, as I soberly seen no other recourse viably available to me.

Continuation of Section-V, Statement of facts

29. Upon doing so, and asking Governor if I'd actually just overheard that he intended to cause me harm, Martalitch exited cell #110 and approached me, while Governor ordered: "Handle that cuz!"

30. After several attempts to retreat / my backing up, and Martalitch's persistent threatening approach, which included two or more instances of physical contact that was unwelcomed, I swung the broom handle in defense. At the time of my swinging the broom handle I was also aware of the homemade shank Martalitch presently possessed, concealed inside his waistband. At such time, I fear imminent death, or great bodily harm from Martalitch.

31. Altercation ensued, wherein, I was physically attacked (brutally / violently) by Governor and Martalitch for an extended period of approx. 7½-8 minutes, in the dayroom of quad 2 of G-dorm, at Taylor C.I.-Main Unit, on 5-10-17.

32. During said altercation, inmate Governor, for a period, held my legs while repeatedly ordering Martalitch to stab me.

33. Martalitch did, in fact, possess a homemade shank / piece of metal sharpened to a point at one end, which he used to stab me multiple times ... (6 times) at Governor's urgings etc....

34. Governor and Martalitch also acted in concert, one with the other, to choke, punch, kick, and stomp me, mercilessly, after already having stabbed me 6 times, causing severe injuries / substantial damages.

35. The acts of Governor and Martalitch (as described), coupled with the acts / omissions of Defendant Hill, caused substantial injuries to my rights as "legally protected by the 8th Amend. of the U.S. Const., significant damages / injuries also occurred to my person therefrom ...

(9)

Continuation of Section-V. Statement of Facts

36. Defendant Hill's acts / omissions constitute the proximate cause of the injuries / damages complained of, the aggravated assault and battery were consequent / proximate results of Defendant Hill's omissions.

37. Defendant Hill's conduct / omissions constituted acts that were outside of his scope of employment with Department of Corrections, as said conduct / omissions violated F.A.C. Chapter-33-208.002(8); 33-208.002(24); and the 8th Amend. of the U.S. Const,

38. Defendant Hill was placed on advance notice of an impending attack, / risk of harm to me, and rather than exercise his authority so as to prevent such attack, or elleviate said risk of harm, Defendant Hill demonstrated a conscious disregard of the harm that his actions, Governor's, or Mastalitsch's would do to the interests, or rights of others / me/mine.

39. My constitutional right to personal safety was substantially intringed, without a compelling state interest, or legitimate penological purpose, that would justify such intrusion,

40. At all relevant times described, within this complaint, Defendant Hill acted under color of state Law, by and through virtue of his employment with Florida Department of Corrections / The State of Florida, ... when he deprived me of my rights to personal safety.

41. John / Jane Doe officers, and John / Jane Doe medical staff arrived at G-Dormitory following the attack that was comitted upon me by Governor and Mastalitsch, at which time I was promptly transported to Taylor C.I.-Main Unit's medical department via wheelchair, on 5-10-17.

42. Upon my arrival to said medical dept., Defendant Brubaker, assisted by three or more Jane Doe medical staff members, applied sutures to three of the stab wounds in my upper right arm, then cleansed / bandaged a stab wound to my right forearm. See Exhibit-A and B

Continuation of Section-V, Statement of facts

43. The following injuries had also been sustained during said incident, "were visible to, and or reported by me personally to Defendant Brubaker and the team of Jane Doe medical staff assisting him", yet never treated/attended to by Defendant Brubaker on this date (5-10-17): "Chipped right front tooth"; "Head injuries/numerous huge knots/swollen areas on my head"; "Injury to my kneck/internal"; "Left eye injury/severely swollen and blood shot etc."; "Injury to my left and right shoulders/internal"; "Stab wound to my left leg/above and slightly to left of the knee"; "Injury to my mid-to-upper back/internal; and stab wound/laceration to upper right arm.

44. During the evaluation by Defendant Brubaker, "pre-", and also several times "post-application of the sutures in my right arm, I complained and constantly informed Defendant Brubaker that I was experiencing excruciating pain in my head; left eye; neck; back; and both shoulders.

45. In response to said complaints (post-sutures), Defendant Brubaker asked me to identify the area or areas that hurt the most, at which time, I'd advised him that my head; eye; neck; back; and shoulders all hurt so bad they seemed to hurt as one, with a grinding feeling in my neck when I turn it.

46. At this time, Defendant Brubaker asked me to rate the pain I was experiencing for him, with one being the least and ten being the worst pain I ever felt. In response to such request, I advised Defendant Brubaker that my level of pain was undoubtedly a level ten, and nearly paralyzing in its intensity, and that I felt disoriented/very dizzy.

47. Despite said complaints, which were accompanied by the obvious injuries supporting a brutal attack/beating, Defendant Brubaker wholly failed to provide any medical treatment for my left eye; head; neck; back;... shoulder injuries (not even diagnostic care referal), i.e. X-rays or CT-Scan) or the stab wound in my leg, which I'd advised him hurt really bad.

<u>Continuation of Section-V. Statement of facts</u>

48. Other than 3 of the stab wounds to my right arm, and a laceration to my lower lip, all other injuries that were observed, reported by me, and complained of to Defendant Brubaker was omitted from form DC4-708, "Diagram of injury", and the "Emergency Room Record form", by Defendant Brubaker, on 5-10-17.    See <u>Exhibits A and B</u>

49. I was placed in the institution's infirmary on 5-10-17, and despite my losing consciousness/blacking out and experiencing a spell of confusion/disorientedness the following morning (5-11-17) while attempting to eat breakfast, when Defendant Brubaker arrived that morning and learned of such complications/on-going complications, he nevertheless released me from the infirmary without any treatment or diagnostic care/orders etc. (I'd advised him of the black-out etc.)

50. It wasn't until approx. 2 months later, after I'd been transferred from Taylor C.I. to A.C.I. (another institution), and the complications in my neck and left shoulder worsened, that medical staff at A.C.I., ordered/did an emergency x-ray of my neck, which revealed damaged C5, C6, and C7 disc in my neck.  See <u>Exhibit-C</u>

51. Medical personnel at A.C.I. prescribed me a "Soft Neck-brace" for one year, and a Naproxen prescription.

52. Defendant Brubaker acted under the color of state law, by and through virtue of his employment with Centurion/D.O.C./the state of Florida, and deprived me of/denied me medical treatment for objectively serious injuries.

53. In the case of the injuries sustained to my neck, Defendant Brubaker's calloused disregard for such injury/complaint, resulted in an approx. 2 month delay in a diagnosis/treatment and said complications worsening with respect to the extreme pain and several instances of temporary paralysis/loss of feeling/control of my extremities, over said 2 month period.

<u>Continuation of Section-V. Statement of facts</u>

54. In the approx. 2 months following said incident (5-10-17) I suffered severe complications stemming from the injuries sustained to my neck, which were not treated etc., including, but not limited to: "Extreme pain in my left shoulder", which resulted in an emergency visit to medical, and my recieving a sling, and Naproxen proscription on approx. 7-8-17 -- 7-10-17 ; "Extreme neck pain", resulting in emergency visit to medical on approx. 7-15-17 ; "Extreme neck pain / temporary paralysis from mid-neck down", excluding right arm, resulting in an emergency trip to medical via a stretcher on approx. 7-16-17 ; and "Extreme neck pain / temporary paralysis from mid-neck down", excluding right arm, resulting in an emergency trip to medical via flatboard / stretcher, and my having to be administered a pain-shot etc. on approx. 7-21-17.

55. Other continual damages that are the results of the injuries / trauma I sustained on 5-10-17 are:

a. Fear of being boxed-in / cornered, or in small areas,

b. Fear of being stabbed unawares,

c. Repeated nightmares of being chased, and stabbed to death with a homemade shank,

d. Difficulties, and feel extreme discomfort / sometimes pain, when I attempt to raise my right arm out to the side, or behind my back. I feel a strong tug at the top front, and rear side of my shoulder, due to two deep stab wounds to my right shoulder muscle,

e. Permanent scars on my skin / arm, leg, and face, which has had "substantial" adverse effect on my appearance, and level of self-esteem.

(13)

Continuation of Section-V. Statement of facts

f. A chipped front tooth, which has had "substantial" ad-
verse effects on my level of self-esteem, and appearance,

g. Difficulties sleeping, due to neck, back, and shoulder
pains that are excruciating, and at times breathtaking,

h. Black-outs / instances of unexpected fainting, due to
head injuries,

i. Instances of short, and, long-term memory loss,
accompanied by spells of confusion / disorientedness,
due to head injuries,

j. Fear of trust for other inmates, correctional staff, or
medical personel.

56. During the aggravated battery / attack, I:

a. Felt extreme pain,

b. Was horrified beyond belief, and anything ever exper-
ienced before. I actually thought that I was about
to be murdered / die an indecent death.

57. During the "false-imprisonment" / "aggravated assault,
I:

a. was extremely frightened that Governor would stab me
with the homemade shank he possessed, or,

b. Governor and Marditsch would beat me to death inside
of cell#110, and I not be able to signal / obtain help.

(14)

Continuation of section - V, Statement of facts

58. Items of evidence Plaintiff anticipates presenting to support his claims / asserted facts, include, but are not limited to:

a. Fixed wing camera footage, observing said attack / dayroom, and cell #110 of quad 2 in G-Dormitory on 5-10-17, between 8:00 Am - 11:55 Am,

b. Camera / footage of G-Dormitory's officer station flap etc. on 5-10-17, between 7:00 Am - 11:55 Am,

C. Plaintiff's medical files / records for 5-10-17 to present,

d. Plaintiff's mental health files / records for 5-10-17 to present,

e. Depositions / statements etc. from John / Jane Doe correctional officers who arrived immediately after the attack, and observed Plaintiff's state, and or condition / injuries,

f. Depositions / statements etc. from Jane Doe medical staff who arrived immediately after the attack, and who were present in the E.R. room, and observed Plaintiff's state, and or condition / injuries, and statements,

g. Depositions / statements etc. from John / Jane Doe administrative staff, who entered the E.R. following the attack, and observed Plaintiff's state, and or condition / injuries,

h. Depositions / statements etc. from John Doe inmates who were assigned to quad 2 of G-dorm on 5-10-17, and who witnessed the events leading up to the attack, and the very attack itself,

(15)

Continuation of Section ~ V, Statement of facts

   i. Photographs of several of Plaintiff's injuries, that were taken by Sgt. M. Edwards on 5-10-17, in re: investigation/ fact finding inquiry,

   j. Defendant Hill's officer files/history while employed at Taylor Correctional Institution ~ Main Unit,

   K. Inspector Potter's investigation files/report etc. in re: Defendant Hill's conduct/activities while employed at Taylor Correctional Institution ~ Main Unit.

59. Plaintiff has set forth sufficient facts to support/establish a plausible 8th Amendment claim against Defendant Hill, and Defendant Brubaker, ~ or the discovery process will produce admissible material/facts which support and est-ablishes the plausibility of Plaintiff's claim(s), as attempted to be brought forth by this action/complaint.

   60. Plaintiff hereby sues Defendant Hill, and Defendant Brubaker, individually, and in their individual capa-cities.

61. Plaintiff hereby "Demands a Jury Trial", in re: all claim(s) against Defendant Hill, and Defendant Brubaker.

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

8th Amendment Violations:

1. Defendant J. Hill violated Plaintiff's rights guaranteed by the Eighth Amendment of the U.S. Constitution, by:

a. being deliberately indifferent to, and failing to protect Plaintiff from; serious Bodily harm / the risk of dangerous conditions (known to him) within the prison. See continuation →

## VII.    RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

I seek judgment against the foregoing Defendant(s) individually, in the sum of $2,000,000 (two million dollars) per Defendant, for said injuries, and the following damages: Compensatory; Punitive; Cosmetic; Descretionary / pain & suffering - mental anguish - emotional distress; and Nominal. ...with the additional costs of suit.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.

10-18-18
(Date)

_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the _18_ day of _October_ , 20_18_.

_____
(Signature of Plaintiff)

Revised 03/07

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

OCT 18 2018

FOR MAILING

(17)

<u>Continuation of Section-VI</u>, Statement of Claims

See Section-V, paragraphs 1-43, 50-51, 54-61.

b. Failing to protect Plaintiff from <u>aggravated battery</u>.
See Section-V, paragraphs 1-4, 25-**43**, 50-51, 54-61.

C. Failing to protect Plaintiff from <u>aggravated assault</u>.
See Section-V, paragraphs 1-6, 35, 37, 39-40, 55(a),
57(a)-(b), 58(a)-(b), 58(d), 58(h), 58(j)-(K), 59-61.

d. Failing to protect Plaintiff from <u>false imprisonment /
aggravated assault</u>. See Section-V, paragraphs 1-4
7-24, 37, 39-40, 55(a), 57(a)-(b), 58(a)-(b), 58(d),
58(h), 58(j)-(K), 59-61.

2. <u>Defendant Brubaker violated Plaintiff's rights as guaranteed
by the Eighth Amendment of the U.S. Constitution by:</u>

a. Being deliberately indifferent to, and failing to provide
Plaintiff with medical treatment for objectively serious
injuries, following an attack by two other inmates.
See Section-V, paragraphs 41-54, 55(a)-(i), 58(c)-(i),
59-61.   -- i.e. "Deliberately indifferent to Plaintiff's
objectively serious medical needs".

(17-(a))

# APPENDIX

Contents:

Exhibit-A: Diagram Of Injury

Exhibit-B: Emergency Room Record

Exhibit-C: Inquiry Theponte in re: X-ray...

(1)

EXHIBIT

A

"Diagram Of Injury"

(2)

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



Date of occurrence 5/10/17          Time of occurrence 1150 AM
Date injury assessed by medical 5/10/17     Time injury assessed by medical 12pm

☐ No injury identified

Description of injury _____
3 lacerations to Right upper arm
laceration to bottom lip
_____
_____

JBrubaker lpn | JBrubaker TCI    *JBrubaker LPN*
                                *Centurien of FL*
Staff Signature                  *Taylor CI*

Inmate Name Johnson Deomrey
DC# P13172          Race/Sex BM
Date of Birth 4/12/82
Institution TCI

This form is not to be amended, revised, or altered without
approval by the Office of Health Services- Administration

DC4-708 (Revised 10/07)

Incorporated by Reference in Rule 33-602.210, F.A.C.

# EXHIBIT

# B

"Emergency Room Record"

(3)

Ex. B

## FLORIDA DEPARTMENT OF CORRECTIONS
## EMERGENCY ROOM RECORD

**Check all that apply:** [X] Inmate   [ ] Employee   [ ] Visitor
[ ] Post-Use-of-Force Exam   [X] Injury   [X] Physical Altercation

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 5/10/17 1:50Am          Time of exam: 12pm 5/10/17

Description of occurrence:

Physical Altercation with Another Iim

Post Use of Chemical Agent Instructions: Shower without soap? [X] N/A   [ ] Yes   [ ] Refused→[ ] educated on importance of showering
[ ] Report any difficulty breathing   [ ] Remain in upright position   [ ] Do Not apply lotion to the skin   [ ] Splash cool water to eyes 5-10 minutes

Vital Signs:   Temperature 081   Pulse 88   Respiration 22   O2 Sat 97 %   Blood Pressure 142/84

Arrived via:   [ ] Ambulatory   [ ] Stretcher   [X] Wheelchair   [ ] Other:_____

Condition on arrival (check all that apply): [X] Alert   [X] Oriented x 4 (person, place, time, situation)   [X] Responding to questions verbally
[ ] Other (requires description in examinations summary)
[ ] C/O pain?   If checked, where?_____

Examination summary:

3 lacerations to Right Upper Arm - moderate blood
laceration to bottom lip, moderate red blood
lungs clear, steady gait
A&Ox3.

Physician notified?   [ ] No   [X] Yes   Name: ARNP Key          Time: 12pm

Treatment provided?   [ ] No   [X] Yes   If yes, describe:
Sutures applied to above areas, cleanse c NS, betadine
tetanus to left arm - deltoid, cont on Abt Tx.

Response to Treatment:
good

Disposition:   [ ] Population   [X] Confinement   [ ] Infirmary   [ ] Hospital   [ ] Rescue   [ ] Other (explain):_____

Discharge Instructions and Education:
RTC if s/s of infection arise.

Health Care Provider's Signature and Stamp: JBrubaker llm          Date/Time: 5/10/17 12pm
J Brubaker LPN
Centurich of FL
Taylor CI

Reviewing Physician's Signature and Stamp: M Key RN/ARNP          Date/Time: 5/10/17 1200
M. Key, ARNP
Centurion of FL
Taylor CI

**Name** Johnson Deonsey
**DC#** P13172          **Race/Sex** BM
**Date of Birth** 4/12/82
**Institution** TCI

**Health Record Distribution:**          White—Health Record
Canary—Inspector General
Pink—Local Requirements

**Employee Distribution:**          White—Safety Officer/Designee
Canary—Employee Copy
Pink—DESTROY

DC4-701C (Effective 12/12)

Incorporated by Reference in Rule 33-602.210, F.A.C.

# EXHIBIT

# C

"Inquiry / Response in re: X-ray"

(4)

Ex. C

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

Mail Number: _____
Team Number: _____
Institution: Apalachee C.I.

| TO: (Check One) | ☐ Warden | ☐ Classification | ☑ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Dronter Lante Johnson | 013142 | M1-106 | Houseman | 8-2-17 |

**REQUEST**                                        Check here if this is an informal grievance ☐

Could you please provide me with a copy of my X-ray result relating to my NECK?

If not, could you please inform me specifically (in response section below) at which discs are degenerated / damaged. Please the requested info / document is dire.

Thank you in advance for your assistance!

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): _____                DC#: 013142

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

DATE RECEIVED:

RECEIVED
AUG 07 2017
APALACHEE CI MEDICAL

There is a fee for copies from your memcor record. When you have money send me another request.

"Moderate DISC Degeneration Noted at C5-C6 and C6-7 levels"

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name) J. Barton, MRC | Official (Signature): _____ | Date: 8-16-17 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE
DIVISION

Deonrey Lonte Johnston #P13172
                Plaintiff,

Vs.                                          Civil Action No: 4:18 cv 282-MW/CAS

J. Hill [Correctional Officer],
J. Brubaker [L.P.N.]
individually, and in their
individual Capacities,
                Defendant's

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

OCT 18 2018

FOR MAILING

SUMMONS

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon
plaintiff, who's address is Union Correctional Institution,
P.O. Box 1000, Raiford, Fl. 32083, an answer to the
complaint which is herewith served upon you, within 20
days after service of this summons upon you, exclusive
of the day of service. or 60 days if the U.S. Government
or officer/agent thereof is a defendant. If you fail to do
so, judgment by default will be taken against you for the
relief demanded in the complaint.

Clerk of the Court,

Date: _____

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA · TALLAHASSEE
DIVISION

Deonsey Lonte Johnston #913172
            Plaintiff,

Vs.                              Civil Action No: 4:18 cv 282-MW/CAS

J. Hill [Correctional Officer]
J. Brubaker  [L.P.N.]
individually, and in their
individual capacities,
            Defendants

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

OCT 18 2018

FOR MAILING

## SUMMONS

### TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon plaintiff, whose address is Union Correctional Institution, P.O. Box 1000, Raiford, FL, 32083, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service, or 60 days if the U.S. Government or officer / agent thereof is a defendant. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Clerk of the Court,

Date: _____

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE
DIVISION

Deontey Lontae Johnson #P13172
                Plaintiff,

Vs.                                    Civil Action No: 4:18 cv 282-MW/CAS

J. Hill [Correctional Officer]
J. Brubaker [L.P.N.]
individually, and in their
individual capacities,
                Defendants

RECEIVED BY
UNION CORRECTIONAL INSTITUTION

OCT 18 2018

FOR MAILING

SUMMONS

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon
plaintiff, whose address is Union Correctional Institution,
P.O. Box 1000, Raiford, FL 32083, an answer to the
complaint which is herewith served upon you, within
20 days after service of this summons upon you
exclusive of the day of service, or 60 days if the U.S.
Government or officer/agent thereof is a defendant.
If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

Clerk of the Court,

Date: _____

Deonsey Lane Johnson MS172-V209
Union Correctional Institution.
P.O. Box 1000,
Raiford, FL 32083



Clerk of:
United States District Court,
Northern District of Florida,
111 North Adams Street,
Tallahassee, FL.
32301

LEGAL MAIL





OCT 18 2018
FOR MAILING

RECEIVED BY
UNION CORRECTIONAL INSTITUTION
OCT 18 2018
FOR MAILING

CHECKED OCT 22 2018