**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DEONSEY LONTE JOHNSON,

      Plaintiff,

vs.

                                         Case No. 4:18-cv-282-MW/CAS

OFFICER J. HILL
and M. KEY, ARNP,

      Defendants.

_____/

**DEFENDANT MELANIE KEY ARNP'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

      Defendant Melanie Key ARNP moves to dismiss Plaintiff Deonsey Lonte Johnson's Second Amended Complaint (Doc. 60). This is a case of mistaken identity. For the second time in this lawsuit, Plaintiff, a *pro se* inmate, mistakenly identifies a female nurse as a male doctor. In his grievance records, Plaintiff specifically charges a male doctor with depriving him of adequate medical care. Defendant Key is a female nurse. Consequently, Plaintiff has failed to exhaust all available administrative remedies with respect to his claim that Defendant Key was deliberately indifferent to Plaintiff's serious medical needs. Defendant Key respectfully requests that this Court dismiss her, with prejudice, from Plaintiff's Second Amended Complaint.

**I.     INTRODUCTION**

This is a civil rights action under 42 U.S.C. § 1983.  Plaintiff is a prisoner in the custody of the Florida Department of Corrections ("FDOC") and Defendant Key is an advanced registered nurse practitioner (ARNP). Plaintiff joined Defendant Key as a defendant for the first time in his Second Amended Complaint (Doc. 60).  Defendant Key was joined in place of Defendant Jessica Brubaker LPN, who Plaintiff had mistakenly identified as a male in his First Amended Complaint (Doc. 11).

In his First Amended Complaint, Plaintiff alleged that Defendant Brubaker deprived Plaintiff of adequate medical care following a fight between Plaintiff and two other inamates.  In response, Defendant Brubaker moved to dismiss the First Amended Complaint on the grounds that Plaintiff failed to exhaust all available administrative remedies against Defendant Brubaker prior to filing this lawsuit. *See* Doc. 54.  Indeed, neither Defendant Brubaker nor any female nurse was identified in Plaintiff's grievance records.  Instead, Plaintiff specifically charged a *male doctor* with failing to provide Plaintiff with adequate medical care for the injuries that he suffered after his fight with the two other inmates.

After learning that Defendant Brubaker was a female nurse, rather than a male doctor, Plaintiff dismissed Defendant Brubaker from this lawsuit.  *See* Doc. 58.  In her place, Plaintiff joined Defendant Key, who Plaintiff also mistakenly

believes is a male. *Id.* at ¶ 2 ("Plaintiff concedes in good faith that one 'M. Key [ARNP],' *who is a male*, should be named as a Defendant, rather than J. Brubaker, a female…") (emphasis added). Contrary to Plaintiff's belief, Defendant Key is a female. There are no new allegations in the Second Amended Complaint; Plaintiff simply asserted all allegations against Defendant Key that were previously made against Defendant Brubaker.[1]

Again, Plaintiff has sued a female nurse, who Plaintiff refers to exclusively in the Second Amended Complaint as a male, rather than the male doctor that Plaintiff specifically charges with providing inadequate care in his grievance records. *See* Proof of Service on Defendant Melanie Key (Doc. 75) (identifying "Melanie Key," an ARNP, as the individual served). It is apparent that Plaintiff is unable to identify this male doctor and continues to waste judicial resources in playing a game of "Guess Who?" Indeed, the primary purpose of the Prison Litigation Reform Act was to prevent prisoners from engaging in this type of meritless litigation. *See, e.g., Abdullah v. Migoya*, 955 F. Supp. 2d 1300, 1307 (S.D. Fla. 2013) (citing *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001) ("The purpose of the [Prison Litigation Reform Act] is to conserve judicial resources by preventing meritless cases initiated by prisoners."). For these

---

[1] In fact, in the Second Amended Complaint it appears that Plaintiff used "white-out" to mark off all references to Defendant Brubaker in the First Amended Complaint and wrote in Defendant Key's name in her place.

reasons, Defendant Key should be dismissed from Plaintiff's Second Amended Complaint with prejudice.

## II.   PLAINTIFF'S ALLEGATIONS OF FACTS[2]

Plaintiff alleges that, on May 10, 2017 and while in the custody of the FDOC, Plaintiff was involved in a fight with two other inmates. Doc. 60 at Section V, ¶¶ 30-34. During the fight, the two inmates allegedly stabbed, choked, punched, kicked, and stomped Plaintiff. *Id.* at ¶ 34. After the fight, "John/Jane Doe medical staff" arrived and transported Plaintiff to the medical department at the prison. *Id.* at ¶ 41. When Plaintiff arrived at the medical department, "Defendant Key, assisted by three or more Jane Doe medical staff, applied sutures to three of the stab wounds in [Plaintiff's] upper right arm, then cleansed/bandaged a stab wound to [Plaintiff's] right forearm." *Id.* at ¶ 42.

Plaintiff alleges that, on May 10, 2017, Defendant Key "never treated/attended to" a number of injuries that Plaintiff sustained during the fight that "were visible to, and or, reported by [Plaintiff] personally to Defendant Key and the team of Jane Doe medical staff assisting him." *Id.* at ¶ 43. These injuries allegedly include: "chipped right front tooth; head injuries/numerous huge knots/swollen areas on [Plaintiff's] head; injury to [Plaintiff's] kneck/internal [sic]; left eye injury/severely swollen and blood shot etc." *Id.* Plaintiff alleges that,

---

[2] The statements in this section are based solely on the allegations in the Second Amended Complaint.

4

while Defendant Key was evaluating him, Plaintiff "complained and constantly informed Defendant Key that I was experiencing excruciating pain in my head; left eye; neck; back; and both shoulders." *Id.* at ¶ 44.

In response, Defendant Key allegedly "asked [Plaintiff] to identify the area or areas that hurt the most." *Id.* at ¶ 45.  Plaintiff advised Defendant that "my head; eye; neck; back; and shoulder all hurt so bad they seemed to hurt as one with a grinding feeling in my neck when I turn it." *Id.*  Defendant then asked Plaintiff to rate his pain on a scale from one to ten, to which Plaintiff replied that his "level of pain was undoubtedly a level ten, and nearly paralyzing in its intensity, and that I felt disoriented/very dizzy."  *Id.* at ¶ 46.  Plaintiff alleges that, despite his complaints, "Defendant Key wholly failed to provide any medical treatment for my left eye; head; neck; back; … shoulder injuries … (not even diagnostic care/referral, i.e. x-rays or CT-scan) or the stab wound in my leg, which I advised him hurt really bad." *Id.* at ¶ 47.  Plaintiff claims that Defendant Key omitted his injuries, "[o]ther than 3 of the stab wounds to my right arm, and a laceration to my lower lip," from the "form DC4-708, Diagram of injury," and from the "Emergency Room Record Form." *Id.* at ¶ 48.

On May 11, 2017 (the day after the fight), "while attempting to eat breakfast," Plaintiff allegedly lost consciousness, blacked out, and experienced "a spell of confusion/disorientedness [sic]." *Id.* at ¶ 49.  Plaintiff alleges that he

5

advised Defendant of the blackout, but "when Defendant Key arrived that morning and learned of such complications/on-going complications, he nevertheless released me from the infirmary without any treatment, or diagnostic care/orders etc." *Id.* Approximately two months later, after Plaintiff had been transferred from the Taylor Correctional Institute to "A.C.I.," and after "the complications in [Plaintiff's] neck and left shoulder worsened," the medical staff at A.C.I. "ordered/did an emergency x-ray of [Plaintiff's] neck, which revealed damaged C5, C6, and C7 discs in [his] neck." *Id.* at ¶ 50. According to Plaintiff, medical personnel at A.C.I. "prescribed me a 'soft neck-brace' for one year, and a naproxen prescription." *Id.* at ¶ 51.

Plaintiff contends that, "[i]n the case of the injuries sustained to my neck, Defendant Key's calloused disregard for such injury/complaint, resulted in an approx. 2 month delay in a diagnosis/treatment and said complications worsening [sic] with respect to the extreme pain and several instances of temporary parylis/loss [sic] of feeling/control of my extremities, over said 2 month period." *Id.* at ¶ 53. In the two months following the fight, Plaintiff alleges that he:

> [S]uffered severe complications stemming from the injuries sustained to my neck, which were not treated etc., including, but not limited to: Extreme pain in my left shoulder, which resulted in an emergency visit to medical, and my receiving a sling, and Naproxen prescription on approx. 7-8-17 – 7-10-17; Extreme neck pain resulting in emergency visit to medical on approx.. 7-15-17; Extreme neck pain/temporary paralysis from mid-neck down, excluding right arm, resulting in an emergency trip to medical via a stretcher on approx. 7-16-17; and Extreme neck pain/temporary

6

> paralysis from mid-neck down, excluding right arm, resulting in an emergency trip to medical via flatboard/stretcher, and my having to be administered a pain-shot etc. on approx. 7-21-17.

*Id.* at ¶ 54. Based on these facts, Plaintiff contends that Defendant Key "acted under the color of state law" and "deprived [Plaintiff] of / denied me medical treatment for objectively serious injuries." *Id.* at ¶ 52.

## III.   MEMORANDUM OF LAW

### A. Exhaustion of all available administrative remedies is a precondition to filing a civil rights lawsuit regarding prison conditions.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), Exhaustion of all available administrative remedies is a mandatory condition precedent to filing suit. *See McDaniel 7 v. Crosby*, 194 F. App'x 610, 612-13 (11th Cir. 2006) (stating that exhaustion was required as a precondition that must be met prior to an inmate filing his civil rights action); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court but is mandatory.").

Moreover, the PLRA requires "proper exhaustion" so that the institution has an opportunity to address the issues on the merits. *See Woodford*, 548 U.S. at 93-94 ("The benefits of exhaustion can be realized only if the prison grievance system

7

is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). The court must dismiss the lawsuit if satisfied that the inmate failed to properly exhaust his available administrative remedies prior to filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

Proper exhaustion further requires that a plaintiff exhaust his available administrative remedies as to each claim and each party set forth in the complaint. *See Martinez v. Minnis¸* 257 Fed. App'x 261, 265 n. 5 (11th Cir. 2007) (finding prisoner who filed grievance concerning numerous claims failed to exhaust a retaliation claim because grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the [prison] with notice of allegedly retaliatory action or the opportunity to correct it"). "If one claim is unexhausted, the Court may separate that claim out and proceed only on those claims that were exhausted." *Baker v. Liadecker*, 2009 WL 3297497, at *5 (N.D. Fla. Oct. 13, 2009).

### B. FDOC Grievance Procedures

The FDOC has established a set of grievance procedures for inmates, which are codified in the Florida Administrative Code. *See* Fla. Admin. Code Ann. §§ 33-103.001 to 33-103.019; *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004). In order to properly exhaust his claims, Plaintiff must comply with these

grievance procedures. *See Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999); *see also Woodford*, 548 U.S. at 93 (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially imposed requirements).

Generally, to properly exhaust all administrative remedies under the FDOC's grievance procedures, a prisoner must complete a three-step process. *See* Fla. Admin. Code Ann. §§ 33-103.005 to 33-103.007. First, the prisoner must file an "informal grievance . . . to the staff member who is responsible in the particular area of the problem." *Chandler*, 379 F.3d at 1288 (quoting Fla. Admin. Code Ann. § 33-103.005(1)). Then, if not satisfied with the response he receives, the prisoner "may file a formal grievance with the warden's office." *Id.* (citing Fla. Admin. Code Ann. § 33-103.006(1)(a)). Finally, if the formal grievance is denied and the prisoner wishes to further pursue his claim, the prisoner "may submit an appeal to the Secretary of the [FDOC]." *Id.* (citing Fla. Admin. Code Ann. §§ 33-103.007)).

For complaints regarding medical treatment, an inmate may file a formal grievance without first filing an informal grievance. *See* Fla. Admin. Code Ann. § 33-103.005(1). Formal grievances must be "clearly stated." *Id.* at § 33-103.006(2)(a). Additionally, "included facts must be accurately stated," and "[e]ach grievance must address only one issue or complaint." *Id*. at §§ 33-103.006(2)(e)-(f). The procedures direct inmates to file formal grievances "to the

9

warden or assistant warden or deputy warden" at the institution or facility level. *Id.* at § 33-103.006(1)(a). Amendments to formal grievances may be filed regarding "issues unknown or unavailable to the inmate at the time of filing the original grievance and must be submitted within a reasonable time frame of knowledge of the new information." *Id.* at § 33-103.006(2)(i).

If a formal grievance is denied or not satisfactorily resolved, an inmate may appeal. The appeal must be submitted to the Office of the Secretary. *Id.* at § 33-103.007(1). If the appeal includes an amendment to a previously filed grievance, the "inmate shall clearly state this at the beginning of PART A of the [appeal form]." *Id.* at § 33-103.007(2)(e). The rules provide that a grievance appeal may be returned "without processing" when:

> The inmate is raising allegations and charges in a grievance appeal that have not been raised below at the previous level. (Since this is an appellate review process and not a fact-finding process, it is not appropriate to raise new allegations, charges and facts that the previous decision maker has not had an opportunity to investigate and respond to).

*Id.* at § 33-103.014(1)(o).

### C. Exhaustion may be considered in a Rule 12(b) motion to dismiss.

It is appropriate to decide the exhaustion defense on a Rule 12(b) motion to dismiss. *See, e.g.*, *Bryant v. Rich*, 530 F.3d 1368, 1375-36 (11th Cir. 2008) (citing *Johnson v. Meadows,* 418 F.3d 1152, 1153–54 (11th Cir. 2005) (remanding case with instructions to dismiss plaintiff's complaint for failure to exhaust

10

administrative remedies)).  Additionally, the Eleventh Circuit recognizes that a motion to dismiss for failure to exhaust administrative remedies, pursuant to the 42 U.S.C. § 1997e(a), is treated as a "matter in abatement and not generally an adjudication on the merits." *Id.*

Thus, the Court is not limited to evaluating the motion based on the four-corners of the pleading and may make factual findings necessary to resolve a failure to exhaust defense. *Id.* at 1374, n. 7 (11th Cir. 2008) (holding that the plaintiff's "allegation that he was denied access to grievance forms at [the prison] was not credible, especially given unrebutted evidence that [the plaintiff] successfully filed a grievance at [the prison]") (citing *Wyatt v. Terhune,* 315 F.3d 1108, 1119–20 (9th Cir. 2003) ("In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact")).

## IV. ARGUMENT

Plaintiff charges Defendant Key with "[b]eing deliberately indifferent to and failing to provide Plaintiff with medical treatment for objectively serious injuries." Doc. 60 at Section V, ¶ 52.  In support of this claim, Plaintiff alleges that Defendant Key "never treated/attended to" injuries that he sustained during the Incident other than the stab wounds and that Defendant Key omitted the injuries on Plaintiff's medical charts.  However, Plaintiff has failed to exhaust his

administrative remedies for his claim that Defendant Key failed to provide him with treatment for his injuries following the Incident because Plaintiff's grievances are directed specifically to a male doctor. Accordingly, the grievances are too narrow to exhaust Plaintiff's claims against Defendant Key, a female nurse.

In Formal Grievance 1705-218-124 ("Grievance 124"), Plaintiff explains that he was transported to the infirmary for treatment after the Incident. *See* Doc. 54-1 at p. 13.³ Plaintiff makes several complaints that a male doctor failed to treat his injuries, stating, "[u]pon treatment by the **Doctor**, I informed **him** that I'd received among my injuries head, neck, and back injuries, and that I'd apparently 'blacked-out' at some point during the ordeal, and that my memory of the incident was spotted [sic]." *Id.* (emphasis added). Plaintiff further claimed that, upon learning that Plaintiff "blacked out" the following morning while eating breakfast, "the **doctor** came into my infirmary cell, did a brief physical exam and left." *Id.* (emphasis added). Plaintiff complained that "at no time (to my knowledge) did the **Doctor** order a C.T. scan or any form of x-ray procedure for my head, neck, or back," and that he is "still having black-outs, headaches, neck and back pains." *Id.* (emphasis added). Plaintiff argued that, "[a]fter the beating I took and the symptoms expressed to the **Doctor**, said C.T. / x-rays etc. should've been ordered." *Id.* (emphasis added).

---

³ See also the Business Record Certification for the grievance records (Doc. 54-2).

12

Neither the FDOC grievance procedures nor the PLRA require Plaintiff to specifically name Defendant Key in a grievance. *See Williams v. Barrow*, 599 Fed. Appx. 979, 986 (11th Cir. 2014) (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000)) ("While a prisoner is not required to name each defendant in a grievance in order to properly exhaust a claim . . . he is required to 'provide as much relevant information as he reasonably can in the administrative grievance process.'"); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007)). Plaintiff's complaints in Grievance 124, however, are specifically directed to the *male doctor* who examined and treated him following the Incident. Defendant Melanie Key is a *female nurse*. Grievance 124 does not refer to Defendant Key or to any misdeeds by any member of the medical staff other than the male doctor.

Plaintiff's failure to identify the proper party is also clear in the Second Amended Complaint, where Plaintiff exclusively refers to Defendant Key as a male. *See* Doc. 60 at Section V, ¶ 43 (alleging that he reported his injuries to Defendant Key and the medical staff "assisting him"); ¶ 45 (in referring to Defendant Key, Plaintiff alleges that he "advised him" of his symptoms); ¶ 46 (alleging that Defendant Key asked Plaintiff to rate the pain for "him"); ¶ 47 (referring to Defendant Key, Plaintiff alleges that he advised "him" of the injuries); ¶ 49 (referring to Defendant Key, Plaintiff alleges that "he" released Plaintiff from

13

the infirmary the day after the fight without treatment); and ¶ 52 (alleging that Defendant Key acted within the scope of "his" employment).

Grievance 124 was denied at the institutional level, and Plaintiff appealed to the FDOC. Doc. 54-1 at p. 32. In the appeal, Plaintiff claimed that "[p]rison officials/medical staff (Centurion)" failed "to order said necessary testings [sic] designed to detect/diagnose [and] treat said symtoms/conditions [sic]." Still, Plaintiff again focused his charges on the doctor, claiming that it was "readily apparent that said examinations should've been ordered [and] that a reasonable **doctor** would have done so." *Id.* (emphasis added). Plaintiffs general allegations against the "medical staff," which he raised for the first time in appealing Grievance 124, are insufficient to exhaust his claim against Defendant Key. *See* Fla. Admin. Code Ann. § 33-103.014(1)(o) (in an appeal, "it is not appropriate to raise new allegations, charges and facts that the previous decision maker has not had an opportunity to investigate and respond to."); *see also Baker*, 2009 WL 3297497 at *6 (finding a grievance appeal that raised new allegations could not be considered "proper" exhaustion because it was not in accordance with the FDOC's grievance procedures); *Helton v. Burks*, 2012 WL 6097036, at *3 (M.D. Ga. May 4, 2012) (finding an inmate "cannot simply assert a new issue at the appeal level of his grievance and then claim that he exhausted that issue.").

14

Plaintiff filed a series of other grievances related to the Incident. *See* Doc. 54-1. Only Grievance 124, however, relates to the alleged failure to provide medical care for the injuries Plaintiff identified in the Second Amended Complaint. While the other grievances reference the failure to provide medical care, they reference specific stab wounds which are not subject to Plaintiff's claim in the Second Amended Complaint. *See* Aguirre v. Feinerman, 2005 WL 1277860, at *6 (S.D. Ill. May 10, 2005) (holding that a grievance that specifically mentioned physical therapy, but mentioned other medical care only generally, did not exhaust a claim concerning failure to diagnose the plaintiff's congestive heart failure; "[w]hile specifically identifying the ailment would not be required, there must be some indication as to what medical issues the plaintiff was complaining about."). Therefore, Plaintiff has failed to properly exhaust his claim that Defendant Key failed to provide Plaintiff with medical care for these injuries.

## V.  CONCLUSION

In order to state a claim against Defendant Melanie Key for deliberate indifference to his serious medical needs, Plaintiff must first demonstrate that he exhausted all administrative remedies prior to filing this lawsuit. While Plaintiff filed a series of grievances related to the Incident, only one grievance identified the injuries underlying the Second Amended Complaint. In this grievance, Plaintiff specifically charges a male doctor with failing to provide Plaintiff with medical

15

care. Neither Defendant Key, a female nurse, nor any other members of the medical staff are identified in this grievance. Accordingly, this grievance is too narrow to exhaust Plaintiff's claims against Defendant Key. For these reasons, Defendant Key respectfully requests that this Court dismiss Defendant Key from this lawsuit with prejudice.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Local Rule 7.1(B) does not apply in this case because Plaintiff is an unrepresented party in custody.

Respectfully submitted,

s/ *Victor Sanabria*
FRANCIS H. SHEPPARD
Florida Bar No.: 0442290
E-mail: fsheppard@rumberger.com
VICTOR G. SANABRIA
Florida Bar No.: 125292
E-Mail: vsanabria@rumberger.com (primary)
docketingmiami@rumberger.com and
vsanabriasecy@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133
Attorneys for Defendant M. Key APRN

Case No. 4:18-cv-282-MW/CAS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 18, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **None**. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

| | |
|---|---|
| Deonsey Lonte Johnson<br>P13172<br>Union Correctional Institution<br>P. O. Box 1000<br>Raiford, FL  32083<br>(*Pro Se*) | Jerry Hill<br>206 San Pedro Court<br>Mayo, FL  32066<br>(*Pro Se*) |

*s/ Victor G. Sanabria*
FRANCIS H. SHEPPARD
Florida Bar No.:  0442290
E-mail:  fsheppard@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
A Professional Association
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300
Fax:  407.841.2133
Attorneys for Defendant M. Key APRN

13675931.v1