IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEONSEY LONTE JOHNSON,

     Plaintiff,

vs.                          Case No. 4:18-cv-00282-MW-MAF

JERRY HILL,
et al.

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Deonsey Lonte Johnson, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action in June 2018 and was granted leave to amend on two occasions. ECF Nos. 1, 10, 58. Plaintiff's second amended complaint is the operative complaint. ECF No. 60. The complaint was served upon Defendants. This cause is presently before the Court upon Defendant Hill's motion to dismiss and, separately, Defendant Key's motion to dismiss both maintaining that Plaintiff failed to exhaust his administrative remedies, as required, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF Nos. 70, 79.

After careful review of the pleadings in this matter, for the reasons stated below, both motions to dismiss should be granted and the instant case dismissed.

## I. Plaintiff's First Amended Complaint, ECF No. 11

In his First Amended Complaint, Plaintiff named Defendant Hill along with "J. Brubaker, LPN." ECF No. 11. Plaintiff alleged that Brubaker failed to provide him with adequate medical care for injuries he received following a physical altercation with another inmate. ECF No. 11. Specifically, Plaintiff alleged that "Brubaker and the team of Jane Doe medical staff assisting him . . . never treated/attended to" his injuries. Id., p. 11. Throughout the complaint, Plaintiff referred to Brubaker as a male. Subsequently, Jessica Brubaker filed a motion to dismiss. ECF No. 54. Brubaker maintained Plaintiff failed to exhaust his administrative remedies because his prison grievances were direct against a male doctor -- too narrow to exhaust his claims against her. Id., p. 11.

In response to Brubaker's motion to dismiss, Plaintiff filed a motion seeking leave to file a second amended complaint to substitute parties:

> since the filing of said complaint . . . Plaintiff has determined that he'd mistakenly named J. Brubaker as the medical staff member at fault for his injuries . . . Plaintiff concedes in good faith that one 'M. Key [ARNP],' who is a male, should be named as a defendant rather than J. Brubaker, a female.

ECF No. 58, p. 1. Next, Plaintiff filed the operative complaint substituting Key for Brubaker. ECF No. 60. When compared to the operative complaint, the allegations against Key are nearly identical to those made previously against Brubaker. The Court granted Plaintiff's motion and construed it to also serve as a voluntary dismissal of the allegations against Brubaker. ECF No. 63.

The claims against Defendant Hill are superseded by Plaintiff's Second Amended Complaint, ECF No. 60, and are outlined below.

## II. Plaintiff's Second Amended Complaint, ECF No. 60.

Plaintiff sues Defendant Jerry Hill, a correctional officer at Taylor Correctional Institution ("Taylor), and M. Key, a female ARNP. ECF No. 60. Plaintiff sues both Defendants in their individual capacities. Id.

### A. Allegations Relating to Defendant Hill

Plaintiff alleges, on May 10, 2017, between 8:00 a.m. and 11:48 a.m., he exited G-Dormitory, Quad 2 at Taylor, approached the dorm officers, and reported to Defendant Hill that Inmates Governor and Martalitich threatened to stab him if he did not leave. Id., p. 5. Plaintiff claims Defendant Hill responded he "did not have anything to do with that." Id. Plaintiff told Hill that if anything happened to him, it would be Hill's fault. Id. Hill responded, "Man, you gotta deal with that the best way you can, you know how this [expletive] goes." Id.

Later, the inmates approached Plaintiff in the dayroom. Id., p. 6. Plaintiff complied with their request to go to Cell 110 where they, allegedly, threatened him again. Id. Plaintiff left the cell. Id. Sometime later, Plaintiff reengaged Martalitich in the dayroom. Id. p. 7. Governor arrived and interrupted their conversation. Id. Plaintiff told Governor he was rude; and an altercation ensued "without intervention . . . from Defendant Hill." Id. Plaintiff makes no assertion that Hill saw or was otherwise available during this altercation.

Afterward, Plaintiff claims he and Martalitich moved their conversation to Cell 110 but Governor followed them and threatened Plaintiff again. Id. He claims that he made "two trips in and out" of Cell 110 and, also, that he was detained for "10-40 minutes," "by force, intimidation, and with a deadly weapon." Id., p. 8. Plaintiff claims that when he exited the dorm later, Hill shrugged his shoulders at him. Id.

When Plaintiff returned to the dorm and passed Cell 110 again, he saw the inmates with a shank; so, he armed himself with a broom handle. Id. The inmates approached him; and Plaintiff swung the broom handle starting a third altercation. Id. It is during this encounter that Plaintiff was injured. During the fight, Plaintiff alleges he was choked, punched, kicked, and stabbed in the upper right arm and the right forearm. Id., pp. 9-10. Plaintiff

also suffered a chipped tooth; head injuries; neck, shoulder, and back injuries; injury to his left eye; and stab wounds to the left leg. Id., p. 11. Plaintiff claims that Defendant Hill is responsible for failing to protect him from the inmates' false imprisonment, aggravated battery, and aggravated assault. Id., pp. 10, 18.

### B. Allegations Relating to Defendant Key

Plaintiff claims that he was transported to medical in a wheelchair and received assistance from Defendant Key (who he references as a male) and three others who "applied sutures to three of the stab wounds in [his] upper right arm" and "cleansed" and "bandaged a stab wound in [his] right forearm." ECF No. 60, p. 10. Plaintiff claims he reported the injuries "to Defendant M. Key and the team of Jane Doe medical staff assisting *him*." Id., p. 11 (emphasis added). Key evaluated Plaintiff before and after he received sutures, during which Plaintiff "advised *him*" about his pain. Id. (emphasis added). Plaintiff claims that Key did not give him any treatment for the injuries to his left eye, head, neck, back, shoulder, and leg. Id. Plaintiff claims that many of the complaints he made to Key were omitted from the medical record by Defendant Brubaker. Id., p. 12. Plaintiff claims that while attempting to eat breakfast, Key arrived and learned of some "complication," but "*he* nevertheless released me without any treatment . . . diagnostic care

[or]. . . orders." Id. Plaintiff claims that he "advised *him* of the blackout" but Key disregarded his complaints. Id. (emphasis added). Plaintiff alleges Key was deliberately indifferent for failure to provide him with medical treatment for serious injuries following the attack. Id., p. 18. However, according to the medical record, Plaintiff received "sutures . . . cleanse CNS, betadine, tetanus to left arm-deltoid, ont on Abt TX . . ." and was directed to return "if SIS of infection arise." Id., p. 23. It is signed by "J. Brubaker, LPN," the "Health Care Provider" and was reviewed by "M. Keys APRN." Id.

Plaintiff claims when he was transferred to another institution, his neck and left shoulder worsened. Id. X-rays revealed Plaintiff suffered damage to three discs in his neck. Id. According to Plaintiff, Key is responsible for the two-month delay in his medical care. Id. Her signature and title are present on Plaintiff's emergency room medical record. ECF No. 54-1, p. 79.

As a result of his injuries, Plaintiff claims "extreme neck pain," "temporary paralysis from mid-neck down," fear, nightmares, pain when he attempts to raise his right arm, permanent scarring, blackouts and fainting from head injuries, and short- and long-term memory loss. Id. pp. 13-14. He seeks $2,000,000 in damages from each Defendant, compensatory and punitive damages, pain and suffering, mental anguish, emotional distress, and the costs incurred with the filling of this suit. Id. p. 17.

### III.    Standard of Review

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002); <u>Gould v. Owens</u>, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. <u>Id</u>. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. <u>Porter</u>, 534 U.S. at 525. This includes the filling of an appeal. Even if an appeal were futile, the requirement cannot be waived. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." <u>Id</u>. It is "not generally an adjudication on the merits." <u>Id</u>.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082

(11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendant. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

## IV. Motions to Dismiss

### A. Defendant Hill's Motion to Dismiss, ECF No. 70

Defendant Hill claims that Plaintiff has failed to exhaust his administrative remedies, therefore, dismissal is warranted. ECF No. 70. According to Hill, although Plaintiff filed a series of grievances, the only one

that related to Hill's conduct was forwarded to the inspector. Id., p. 2. The investigation that followed resulted in a disciplinary hearing, where Plaintiff was found guilty of assaulting another inmate. Id., pp. 8-9. Because Plaintiff refused to provide a written or verbal statement in his defense during the investigation, his voluntary termination of the administrative remedy does not entitle him to exhaustion. Id., p. 9.

B. Defendant Key's Motion to Dismiss, ECF No. 79

Defendant Key claims that she was improperly named by Plaintiff in this case. According to Key, Plaintiff "mistakenly identifies a female nurse as a male doctor," which conflicts with his prison grievances filed against a male doctor. ECF No. 79, p. 1. Key asserts Plaintiff named no female nurse in his grievances. Id., p. 2. Plaintiff made the same mistake in an earlier version of his complaint asserting claims against Defendant Brubaker and, eventually, dismissed her from the lawsuit, when he learned she was a female nurse and not a male doctor. Id. However, Plaintiff substituted Key for Brubaker in his second amended complaint. Id. Key identifies Plaintiff's prior statement conceding that Key is a male who should be named as a defendant rather than Brubaker. Id., p. 3. Key references Plaintiff's grievances in support. Accordingly, Plaintiff failed to exhaust his administrative remedies against Key; and dismissal is warranted. Id., p. 12.

## V. Plaintiff's Response, ECF No. 83

Plaintiff filed a response to Hill's motion to dismiss denying that he failed to exhaust his administrative remedies. ECF No. 83. Plaintiff provides additional exhibits to support his assertion. Id., pp. 8-12. Plaintiff did not address Defendant's Key's motion to dismiss alleging the same; and he did not file a separate response in opposition. Id.

## VI. Discussion – Facts Pertinent to Exhaustion

### A. FDC Grievance Procedures

Plaintiff was in the custody of the Florida Department of Corrections (FDC); therefore, he was entitled to the grievance procedure set forth in the Florida Administrative Code. See Fla. Admin. Code Ann. § 33-103.001.

A prisoner must complete a three-step process to properly exhaust his administrative remedies. The first step in the grievance procedure requires the prisoner to submit an informal grievance "within 20 days" of the incident unless the prisoner receives a 45-day extension. See id., §§ 33.103.002(12), 33.103.011(1)(a). Next, if the prisoner is not satisfied, within the time allotted, he "may file a formal grievance with the warden's office." Id., § 33-103.006(1)(a). Finally, the inmate may appeal if he "feels [a] grievance has not been satisfactorily resolved during the formal grievance procedure." Id., § 33-103.1007(1).

From the date of receipt, the FDC has ten calendar days to respond to informal grievances, twenty days to respond to formal grievances, and thirty calendar days to respond to appeals and direct grievances to the Office of the Secretary. Id., § 33-103.011(3)(a)-(c). If the FDC does not timely respond to the grievance, the inmate "shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies." Id., § 33-103.11(4).

To properly exhaust his administrative remedies, an inmate must appeal the denial of a grievance. Arias v. Perez, 758 F. App'x 878, 881 (11th Cir. 2019). The inmate properly appeals by completing a Form DC1-303 "within 15 calendar days from the date of the response to the formal grievance." Id., §§ 33-103.006(1), 33-103.011(1)(c). Late appeals or those which are not in compliance with the Administrative Code are returned without further processing. Id. § 33-103.014(1).

Defendant Hill submits numerous grievances filed by Plaintiff during his incarceration at various prisons; however, only those most relevant to the inquiry of whether Plaintiff exhausted his administrative remedies against Defendants Hill and Key are discussed below.

B.  <u>Plaintiff Failed to Exhaust His Administrative Remedies Against Key Because He Failed to File a Grievance Against Her</u>.

On May 14, Plaintiff filed four grievances against medical staff alleging

the following:

1.  #1705-218-098 - the "male" "doctor" failed to suture one of the *four* stab wounds to Plaintiff's right arm. ECF No. 70-1, p. 15. The doctor should have sterilized it, stripped it, or placed a stitch or two." <u>Id</u>.

2.  #1705-218-099 – Plaintiff claimed he suffered *five* stab wounds, including one to his knee for which he did not receive any treatment or medical supplies to "doctor himself," although he received sutures and cleaning for most of his wounds and injuries. <u>Id</u>., p. 7.

3.  #1705-218-100 - Plaintiff admitted he was "treated for multiple wounds/injuries varying in degree" including "*four* stab wounds to the right arm . . . which required" a total of thirteen stiches. <u>Id</u>., p. 3. Before Plaintiff was "discharged," "medical staff" failed to provide him with a front handcuff pass because use of his right shoulder was limited from the stab wound. <u>Id</u>. When he was cuffed behind his back, it caused one of the "injuries to tear again and bleed again," causing pain. <u>Id</u>.

4.  #1705-215-101 – "medical staff" failed to provide Plaintiff with a low bunk pass to accommodate his injuries. <u>Id</u>., p. 19.

All grievances were, respectively, denied. <u>Id</u>., pp. 16, 8, 4, 20.

Next, Plaintiff appealed the denial of these grievances:

1.  Appeal #17-6-22082 - "prison officials" and "medical personal (sic)" failed to provide him with a front cuff pass. <u>Id</u>., p. 2. The response to grievance #1705-218-

100 was insufficient and a reasonable doctor would have perceived a front cuff pass to be of importance. Id.

2. Appeal #17-6-22083 - grievance #1705-218-099 was not "appropriately address[ed]" because "prison officials/medical personel (sic) did nothing to prevent [infection of his wounds or] eliminate . . . pain." Id., p. 6.

3. Appeal #17-6-22085 - "prison officials and medical staff" or "medical personel (sic) (Centurion) did nothing to prevent . . . eliminate . . . infection or pain . . . for more than a week." Id., p. 14.

4. Appeal #17-6-22086 – grievance #1705-218-101 was not "appropriately address[ed]" because "prison officials" and "medical staff" knew his serious conditions required a low bunk pass for one week. Id., p. 18.

All appeals were denied. Id., pp. 5, 9, 17, 21.

On May 16, in formal grievance #1705-218-124, Plaintiff alleged he was treated by a male doctor for his injuries and "informed *him*" of his "head, neck, and back injuries." Id., p. 11 (emphasis added). The next day in the infirmary, the doctor "did a brief physical exam and left" without ordering a CT scan or x-ray. Id. The grievance was denied. Id., p. 12. Plaintiff filed appeal #17-6-22084 alleging "prison officials," "medical personell (sic)," and "medical staff" should have ordered the tests and "knew of and ignored" his "serious condition." Id., p. 10. His appeal was denied. Id., p. 13.

On June 13, Plaintiff filed an untimely, formal grievance #1706-102-067 alleging "J. Brubaker" falsified his medical reports by not documenting

all of his stab wounds (four instead of five). ECF No. 70-1, p. 32. Plaintiff stated the Brubaker completed the diagram of injuries and the emergency room record. Id. The grievance was denied. Id., p. 33

As indicated above, Plaintiff's allegations vary from admissions that he, indeed, received treatment (sutures, cleaning, etc.) to claims that medical staff "did nothing." More importantly, Plaintiff did not name *any* person who was deliberately indifferent to his medical condition and instead made allegations generally against prison officials, medical personnel, medical staff, or a "male" "doctor." Plaintiff did not name Defendant Key in any grievance related to his medical care. Finally, Plaintiff did not raise any opposition to Key's motion to dismiss. See N.D. Fla. Loc. R. 7.1(E). Accordingly, because Plaintiff failed to exhaust his administrative remedies against Defendant Key, her motion to dismiss should be GRANTED.

C. Plaintiff Failed to Exhaust His Administrative Remedies Against Hill.

On May 15, Plaintiff filed grievance #218-1705-0103 making nearly the same allegations raised in the operative complaint. ECF No. 70, pp. 16-17; see also Plaintiff's Exhibit ECF No. 83, p. 89. However, in the grievance, Plaintiff alleged that on May 10, Hill was within twenty-five feet of the attack by two inmates. Id. He makes no such assertion here. The prison approved Plaintiff's grievance and replied that his "complaint" was forwarded to the

Page 15 of 17

"Inspector C. Potter with the I.G.'s office. He is investigating this incident and will be speaking with you." ECF No. 70, p. 17. Plaintiff did not appeal the grievance.

The investigation resulted in a disciplinary proceeding against Plaintiff. ECF No. 70, p. 15. Between May 21 and May 23, Plaintiff filed three formal grievances related to the proceeding, which found him guilty of assault and battery and resulted in the loss of gain time:

1. #1705-218-144 – Plaintiff claimed investigative facts and witness statements were not enumerated in the report. Id., p. 14. The prison denied the grievance stating Plaintiff was guilty of battery or attempted battery on an inmate and was "afforded the opportunity to participate with a written statement in your defense and you chose to tear up and flush the information provided to you in the toilet." Id., p. 15. Plaintiff filed appeal #17-6-24734 alleging non-compliance with disciplinary procedures, which was denied. ECF No. 70-1, pp. 27-28.

2. #1705-218-146 – Plaintiff alleged the report contained an incorrect description of his violation and did not comply with the rules governing the proceeding. Id., p. 35. The report also omitted any facts regarding the medical attention of responding officers and medical staff who applied pressure to his wounds, rushed him to medical, sutured his stab wounds and admitted him to the infirmary. Id., p. 36. His grievance was denied. Id., p. 38. Plaintiff filed appeal #17-6-24741, which was denied. Id., pp. 34, 39.

3. #1705-218-176 – Plaintiff alleged the report contained inaccurate facts and that he acted in self-defense. ECF No. 70, p. 12. The prison denied the grievance finding that Plaintiff "initiate[d] the attack" and "[t]he video shows

[Plaintiff] as the aggressor. Id., p. 13. Plaintiff filed appeal #17-6-20992, which was denied. ECF No. 70-2, pp. 18, 21.

More than one year after filing the grievance against Hill for failure to protect, on May 6, 2018, (one month before initiating this lawsuit) Plaintiff filed a request for "the final resolution" and "conclusion" of grievance #218-1705-0103 as well the full name of Defendant Hill so Plaintiff could properly serve him with the Complaint in this case. Plaintiff's Exhibit ECF No. 83, p. 10. The matter was forward to "D4-OIG." Id. On June 14, 2018, Plaintiff filed another request asking for the address of the records custodian to "[obtain] public records" that "involve a grievance" he filed on May 10, 2017, while at Taylor. Id., p. 11. Plaintiff was directed to contact "Ms. Ingram in classification at Martin C.I." Id. Finally, on October 21, 2018, while housed at Union C.I., Plaintiff filed a third inmate request seeking the result of the matter against Defendant Hill in "case #17-8214" by the "I.G.'s office." Id., p. 12. The prison informed Plaintiff it did not have access to "I.G. records."

Plaintiff never filed an appeal of his grievance nor does he claim that he filed an appeal. ECF No. 83. Instead, he argues whether or not he preserved an appeal of a grievance is "immaterial to the question of exhaustion." Id., p. 4. Plaintiff is mistaken. His failure to appeal his grievance means he cannot satisfy the exhaustion requirement. The PLRA requires

him to do so. 42 U.S.C. § 1997(e); <u>Woodford</u>, 548 U.S. at 90. Accordingly,

Defendant Hill's motion to dismiss should be GRANTED.

## VII. Conclusion and Recommendation

It is respectfully recommended that both Defendant Hill's Motion to Dismiss, ECF No. 70, and Defendant Key's Motion to Dismiss, ECF No. 79, be GRANTED for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1997(e) and that the case be DISMISSED and CLOSED. It is further recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on September 3, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).